# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2367 | **DATE** | 11/25/2002 |
| **CASE TITLE** | U S A ex rel. ROBERTO OROZCO vs. JERRY STERNES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| EF | courtroom deputy's initials |

Date docketed: NOV 26 2002

Document Number: 14

02 NOV 25 PM 3:52
U.S. DISTRICT COURT
CLERK


NOV 2 6 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel. ROBERTO OROZCO, <br><br>　　　　　Petitioner, <br><br>　vs. <br><br>JERRY STERNES, <br><br>　　　　　Respondent. | No. 00 C 2367 <br><br> HONORABLE CHARLES R. NORGLE |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge:

Before the court is Robert Orozco's petition for writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the petition is denied.

**I.　BACKGROUND**

In a bench trial held in the Circuit Court of Cook County, Orozco was convicted of first degree murder and sentenced to 25 years imprisonment. The court summarizes the facts as described by the Illinois Appellate Court, which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); see Sumner v. Mata, 449 U.S. 539, 554-46 (1981); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct.") (quoting Montgomery v. Greer, 956 F.2d 677, 680 (7th Cir. 1992)).

In the summer of 1991, Orozco was involved in running dispute with his ex-wife, Rhonda, over matters of child visitation. Adding to the dispute was the fact that Rhonda had a new romantic interest, Joe Soto. Early in the day on July 1, 1991, Orozco made several harassing phone calls to



Rhonda, and damaged Soto's car while it was parked near Rhonda's home. Rhonda called police, who investigated the situation, and put a wiretap device on Rhonda's phone line.

Orozco continued with his phone harassment later in the evening, making several calls to Rhonda and threatening to go to Rhonda's home. Rhonda told Orozco to stop the harassment, and warned him that she would call the police if he came over. Undeterred, Orozco went to Rhonda's home, and she called police. By the time police arrived, Orozco had left the scene.

After the police left, Orozco continued to call Rhonda. At some point, Soto called Rhonda and learned of the situation. Thereafter, Soto and several members of his family went to Rhonda's home. Shortly after Soto arrived at Rhonda's home, Orozco made another telephone call. This time, Soto spoke with Orozco. Soto said something to the effect that Orozco should come to meet Soto and settle the matter man to man. Soto and others went on to the front porch of Rhonda's home to wait for Orozco.

Orozco arrived and parked across the street from Rhonda's home. Orozco brought with him a small caliber rifle, and began shooting in the direction of Rhonda's home from the street. Soto was hit with what turned out to be a fatal shot. After shooting Soto, Orozco went on to Rhonda's porch and repeatedly screamed "Come out!" Orozco used the rifle to break the front picture window and then walked off the porch and fired several shots into Soto's car before fleeing.

After Orozco was arrested, he gave a detailed confession to an Assistant State's Attorney. Orozco said that he was angry with Rhonda over child visitation issues. Orozco admitted to shooting Soto, breaking Rhonda's picture window, and shooting Soto's car.

The evidence against Orozco at trial consisted of eyewitness testimony from several persons who saw the shooting, forensic and ballistic evidence, and Orozco's post-arrest confession. Orozco

testified in his own defense, and claimed that he had been provoked by Soto. Orozco also testified that he was merely trying to scare Soto. Orozco has never denied that he committed the crime.

Orozco filed a direct appeal, arguing that the evidence was insufficient to prove beyond a reasonable doubt that he intended to kill or cause great bodily harm to Soto. Orozco also argued that his conviction should have been for second degree murder instead of first degree murder because his actions were not premeditated and were the result of serious provocation creating sudden and intense passion. The Illinois Appellate Court rejected Orozco's argument and affirmed the conviction in all respects. Thereafter, Orozco sought leave to appeal in the Illinois Supreme Court, which denied his request.

Orozco filed a post-conviction petition under Illinois law, arguing ineffective assistance of counsel and that the sentence was excessive. The state trial court denied Orozco's petition, which Orozco appealed. Orozco received appointed counsel for the appeal, who later moved to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987). The Illinois Appellate Court granted counsel's motion, writing that it had carefully reviewed the record and found no issues of arguable merit. Orozco then unsuccessfully sought review in the Illinois Supreme Court.

Orozco now petitions this court for relief under 28 U.S.C. § 2254, arguing ineffective assistance of counsel and an excessive sentence. The matter is fully briefed and ripe for ruling.

## II. DISCUSSION

### A. Standard of Review:

Orozco's case is governed by 28 U.S.C. § 2254(d), as amended by AEDPA. Section 2254 sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams).

The "unreasonable application" clause of § 2254(d)(1) governs alleged errors in the state court's application of Supreme Court precedent to the facts of the case. See Boss, 263 F.3d at 739; see also Williams, 120 S. Ct. at 1520-21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying

4

§ 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). While federal courts have an independent duty to say what the law is, Williams, 120 S. Ct. at 1522, an erroneous application of the law by a state court will not be grounds for relief unless the application was also unreasonable. See id.; Boss, 263 F.3d at 739. Whether the state court's decision was reasonable is an objective question that does not necessarily turn on the correctness of the state court's decision. See Williams, 120 S. Ct. at 1521-22 (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 120 S. Ct. at 1520-22; Washington v. Smith, 219 F.3d 620, 628 & n.5 (7th Cir. 2000).

**B.    Procedural Default:**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims).

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas claim that were not raised in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present

5

both the operative facts and the controlling legal principles to the state court before bringing the claim in a federal habeas petition. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir.1999) (discussing exhaustion of claims) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Recently, the Seventh Circuit addressed the effect on federal habeas review of a state court granting Finley motion. See Wilkinson v. Cowan, 231 F.3d 347, 350-51 (7th Cir. 2000). Pennsylvania v. Finley allows appointed counsel to withdraw from an appeal of state post-conviction proceedings when counsel has reviewed the record and found no issues of merit. See e.g. Wilkinson, 231 F.3d at 350-51. It is not unusual for an Illinois Appellate Court to grant a Finley motion, and in so doing, write that it has carefully reviewed the record and has found no arguable issue of merit. Wilkinson holds that such a disposition is a decision on the merits, rather than a decision based on a procedural default. See Wilkinson, 231 F.3d at 350-52. Thus, a petitioner in that situation has preserved for federal habeas review the merits of all claims presented in the post-conviction petition. See id.; Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). With these principles in mind, the court addresses Orozco's petition.

## C. Ineffective Assistance of Counsel:

Orozco argues that both his trial and appellate counsel were ineffective. This claim is governed by the familiar standards of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Orozco must first demonstrate that counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See id. at 687-88. The court reviews counsel's performance deferentially, particularly counsel's choice of strategies. See Drake v. Clark, 14 F.3d 351, 355-57 (7th Cir. 1994). The court presumes that counsel's performance "falls within

the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see also Drake, 14 F.3d at 355-57. Accordingly, a habeas petitioner bears a heavy burden in demonstrating that counsel's performance was deficient to the point of offending the constitution. See Drake, 14 F.3d at 355-57; compare Brown v. Sternes, 304 F.3d 677, 691-99 (7th Cir. 2002) (granting habeas relief due to ineffectiveness assistance of counsel). Then, Orozco has to show that the deficient performance prejudiced the proceedings, meaning that but for the deficient representation, there is a reasonable probability that the result of the proceedings would have been different. See id. at 694; see also Morris v. United States, 264 F.3d 726, 727 (7th Cir. 2001) (noting that Strickland prejudice is shown if the court's confidence in the outcome is undermined).

Orozco claims that his trial counsel was ineffective because counsel did not adequately cross-examine the eyewitnesses to the shooting. He alleges three specific shortcomings of counsel: (1) counsel failed to fully explore the bias or prejudice of the eyewitnesses, who were all related to either Rhonda or Soto; (2) the testimony of one eyewitness was weak because she claimed to have seen Orozco with the rifle, but also testified she was inside Rhonda's home when Orozco arrived; and (3) there was no cross-examination into the visual acuity of one eyewitness who was outside in the street at the time of the shooting. Orozco also claims that his appellate counsel was ineffective for failing to raise these issues on direct appeal. None of these points has merit.

A hindsight based attack on counsel's choice of cross-examination strategy is rarely a winning argument. See Drake, 14 F.3d at 355-57. The issues that Orozco claims that counsel should have pursued on cross-examination all go towards establishing that Orozco was the shooter. But in this case there was no doubt that Orozco shot and killed Soto. Orozco admitted the shooting in post-arrest statements and testified at trial that he intended to scare, but not kill, Soto. Indeed, Orozco has

7

never denied that went to Rhonda's home with a rifle and fired the fatal shot. There would have been little, if any, point for Orozco's counsel to attempt a line of cross-examination that disputed Orozco's involvement in the crime. Counsel was well within the range of permissible choices when counsel chose not to cross-examine the witnesses on their bias/prejudice or their ability to have seen the murder.

For the same reasons, it is plain that Orozco did not suffer prejudice from counsel's cross-examination strategy. The evidence against Orozco was overwhelming. There is little chance that the outcome of the proceedings would have been different if counsel had cross-examined the witnesses on their bias/prejudice or observations of the scene. In short, counsel's choice of cross-examination strategies does not undermine the court's confidence in the outcome of the proceedings.

Because Orozco's trial counsel was not ineffective, his appellate counsel was not ineffective for failing to raise the issues on direct appeal. Orozco's ineffective assistance claims are denied on their merits.

**D. Sentencing:**

Orozco claims that his sentence is excessive because it fails to adequately account for his rehabilitation potential. The court must analyze Orozco's sentencing claim under the Eighth Amendment, which prohibits cruel and unusual punishments. U.S. Const. amend. VIII; see also Holman v. Page, 95 F.3d 481, 485-86 (7th Cir. 1996) (analyzing Harmelin v. Michigan, 501 U.S. 957 (1991)). As Harmelin and Holman make clear, Orozco's argument is without merit. Orozco's 25 year sentence for first degree murder is not excessive, nor is it above the statutory maximum. See e.g. Holman, 95 F.3d at 486 (a "sentence of natural life imprisonment for murder is eminently rational"); see also Koo v. McBride, 124 F.3d 869, 875 (7th Cir. 1997) (citing cases and noting that

8

a federal habeas court generally does not review a sentence that falls within the state's statutory limit unless it is grossly disproportionate to the crime). Moreover, the State of Illinois "has the highest interest in meting out severe punishment for . . . brutality, both to deter others of similar moral depravity from committing like crimes and to prevent repeat offenses." Holman, 95 F.3d at 486. Orozco was harassing his ex-wife over child visitation issues. When confronted with resistance, Orozco responded with a deadly weapon, and deliberately brought the rifle with him to confront Soto. Orozco then fatally shot Soto from the street, and continued with his rampage on the front porch of Rhonda's home. A 25 year sentence for such a crime is well within the boundaries of the Eighth Amendment. See Holman, 95 F.3d at 485; see also Harmelin, 501 U.S. at 1009-10 (Kennedy, J., concurring, stating that the Eighth Amendment forbids sentences that are grossly disproportionate to the crime).

## III. CONCLUSION

For the foregoing reasons, the court denies Orozco's application for a writ of habeas corpus under 28 U.S.C. § 2254.

IT IS SO ORDERED.

ENTER: *[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 11/25/02